Gloria P. BLOCKER, Plaintiff,

v.

AT & T TECHNOLOGY SYSTEMS and AT & T Information Systems, Defendants.

No. 86–486–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

July 16, 1987.

Harry L. Lamb, Jr., Orlando, Fla., for plaintiff.

Anne C. Conway, Orlando, Fla., Peter W. Zinober, Tampa, Fla., Laurel J. McKee, Berkeley Heights, N.J., for defendants.

## ORDER

GEORGE KENDALL SHARP, District Judge.

This case is before the court upon the motion for summary judgment by defendants AT & T Technology Systems (AT & T Tech) and AT & T Information Systems (AT & T Info) (Doc. 10). In this action, plaintiff seeks redress under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), and the Equal Pay Act, 29 U.S.C. § 206(d), for defendants' alleged sexual discrimination with respect to wages and salaries and promotion policies and practices. Defendants have filed plaintiff's deposition and affidavits by Charles Bendl, John M. Smith, James Curtin, and Richard Rhodes in support of their motion. Plaintiff has not responded to the motion.

## STATEMENT OF FACTS

Plaintiff, a black female with a Bachelor of Science degree in business administration with a major in accounting from the University of Florida, became a Certified Public Accountant (C.P.A.) in 1979. After approximately two years as a staff auditor with Price Waterhouse in Atlanta, plaintiff transferred to the firm's Orlando office at her request and remained with Price Waterhouse until November, 1979. Thereafter, she was employed as a private accountant for an Orlando area savings and loan association for over three years, where her salary at the time of her departure was between $23,000 and $24,000.

Because she felt that her salary was not commensurate with her experience and abilities and because her position lacked room for professional growth, plaintiff began looking for a position elsewhere. In the late spring of 1983, she interviewed with AT & T Info. Although plaintiff indicated that she was interested in a senior auditor position, she was told by Charles Bendl, the Orlando Audit Manager, and William Kiamie, that no senior auditor positions were available in Orlando, and that her lack of experience and familiarity with the Bell System or AT & T also precluded her placement as a senior auditor. They told her that the other four auditors in the Orlando area were classified as senior auditors, but that they had a great number of years of experience with the Bell System. However, Bendl and Kiamie told her that the recently-opened Orlando office was growing and that openings for senior auditors should soon be available. Plaintiff was offered employment by AT & T Info as a junior or Level I Auditor, with a beginning salary between $28,000 and $29,000. The senior auditor position offered her by United Telephone paid less, and plaintiff accepted the junior auditor position with AT & T Info and started work on September 6, 1983.

Charles Bendl, the Audit Manager for AT & T Info in Orlando, was responsible for supervising all of the Orlando internal auditing organization employees, including plaintiff, from April, 1983, through February, 1985. At her interview, he advised plaintiff in detail of the difference between the Level I and Level II Auditor positions. The Level I Auditor position is an entry-level position with work which normally is limited to simple audits. In addition, Level I Auditors sometimes assist Level II Auditors on their audits. Level II Auditors are responsible for more complex audits on a wider range of company operations.

When plaintiff began work at AT & T Info, the Orlando internal audit organization consisted of Charles Bendl, the Audit Manager, and Level II Auditors Jerry Armour, Cy Mescher, Clark Lytle and Eric Graham. As plaintiff admitted in her deposition, these other auditors had considerable experience in the AT & T or Bell System. According to James Curtin, AT & T Wage Practices Specialist in Orlando, Armour had been employed by AT & T affiliated companies since March 7, 1955, Mescher since October 23, 1946, Lytle since June 16, 1952, and Graham since February 20, 1961. Plaintiff was interviewed and hired during implementation of the divestiture of the Bell System, and AT & T Info was in an organizational phase with employees transferring in from various geographic and organizational components of the Bell System. AT & T's policy was to place qualified employees whose jobs were eliminated in other jobs at the same salary rather than to downgrade or demote them. When Mescher retired and Lytle was placed on medical disability in late 1983, Blaine Zimmerman and George Kerwer transferred in from other system facilities and were classified as Level II Auditors. Zimmerman had been employed by AT & T affiliated companies since January 20, 1956, and Kerwer since February 14, 1955.

Plaintiff was on medical disability leave for her pregnancy between January 28, 1984, and April 15, 1984. In the April, 1984, annual pay review, plaintiff received an annual salary increase of approximately $2,000 and an additional merit bonus.

Bendl stated that, during his tenure, which ended with his retirement in early 1985, he was very pleased with plaintiff's job performance and that he recommended on several occasions that she be promoted to a Level II auditor. Bendl indicated that the only reason plaintiff was not promoted during his tenure was that there was a promotion and hiring freeze in effect, which adversely affected both qualified male and female Level I Auditors in other locations. Also in April, 1984, the Orlando internal audit group was transferred to AT & T Tech.

Two June, 1984, Level II Auditor openings in Orlando were filled by the lateral transfer of Donald Cullerton and Kenneth Bradshaw. Cullerton had been employed by AT & T affiliates since July 16, 1962, and had extensive experience as an internal auditor for AT & T. Bradshaw, a C.P.A. with prior non-AT & T auditing experience, was hired March 12, 1984, as a Data Systems Manager at an annual salary of $36,-200. After his management position was eliminated, Bradshaw, pursuant to AT & T's policy of not demoting employees, was allowed to laterally transfer to the Level II Auditor position. He retained his $36,200 salary in accordance with the AT & T general policy of paying lateral transfer employees the same salary they had in their former position.

At some point in late 1984 or early 1985, Kerwer retired and Zimmerman left the Orlando internal auditing organization. Before Bendl's February, 1985, retirement, Peter Arcomone also was transferred into the Orlando internal auditing group as a senior or Level II Auditor. Arcomone had been employed by AT & T affiliates since June 1, 1970, and had extensive auditing experience. After Bendl's retirement, supervision of the Orlando internal audit group was handled by John M. Smith, District Manager of Internal Auditing for AT & T. According to Blocker and Smith, while she was under his supervision plaintiff received a $2,500 annual raise and a $2,500 merit bonus. Smith supported plaintiff's desire to be promoted, and to his knowledge the only reason she was not

promoted to a Level II Auditor while he supervised the group was the promotion freeze which was in effect. Plaintiff admitted she was told that there was a promotion freeze in effect at least part of the pertinent period. Plaintiff eventually was promoted to a Level II Auditor in April, 1986.

With the exception of Bradshaw, the salaries of the male Level II Auditors reflected the extent of their seniority or longevity of service with AT & T and its affiliates. Plaintiff's deposition supports this conclusion, since from a review of the deposition it is clear that defendants conducted a systematic, annual pay review and increase each April. Both Bendl and Smith stated that they had no knowledge of any facts indicating that plaintiff was paid less for the same work because of her sex.

Bendl indicated that after June, 1984, plaintiff complained that she was doing the same work as Bradshaw for less money, but did not complain about her salary in relation to any other male employee. Plaintiff's complaints eventually led to an EEOC discrimination charge filed April 5, 1985. By notice dated February 19, 1986, plaintiff was notified of her right to sue. The return receipt attached to the affidavit of Richard Rhodes, EEO Specialist in the Tampa Area Office of the EEOC, reflects that the notice of right to sue was delivered to Gloria Blocker on February 22, 1986, and the return receipt also is postmarked February 22, 1986. Plaintiff filed this suit under Title VII and the Equal Pay Act on May 27, 1986.

## CONCLUSIONS OF LAW

This court has jurisdiction over plaintiff's Title VII and Equal Pay Act claims pursuant to 42 U.S.C. § 2000e–5 and 29 U.S.C. § 206(d). In evaluating this motion, the court has been guided by Federal Rule of Civil Procedure 56(c), which provides that summary judgment may be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." "By its very terms, [Rule 56(c)] provides that the mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment analysis centers on the definitions of the adjectives "genuine" and "material." A "genuine" issue of fact is shown where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Williams v. Georgia Department of Human Resources,* 789 F.2d 881, 883 (11th Cir.1986) (per curiam) (acknowledging the "genuine issue for trial" consideration). Once a moving party has made and supported a motion as required under Rule 56(c), "[t]he non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Commuter Transportation Systems, Inc. v. Hillsborough County Aviation Authority,* 801 F.2d 1286, 1291 (11th Cir.1986) (citing *Matsushita*). "Material" refers to "the substantive law's identification of which facts are critical and which facts are irrelevant that governs" or "a criterion for categorizing factual disputes in their relation to the legal elements of the claim...." *Anderson,* 106 S.Ct. at 2510.

Comparable to directed verdict analysis, a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 2512. The trial judge's inquiry is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.... Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find

for either the plaintiff or the defendant. ..." *Id.* at 2512–13. Therefore, at the summary judgment stage, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.* at 2514. On the facts presented in this case and the applicable law, the court concludes that there are no genuine issues of material fact.

### A. *Title VII*

■ Under 42 U.S.C. § 2000e–5(f)(1), a private plaintiff must file her Title VII action within ninety (90) days after receiving a right-to-sue notice from the EEOC. *Law v. Hercules, Inc.,* 713 F.2d 691 (11th Cir.1983). This ninety-day limit is strictly enforced in the Eleventh Circuit. *Laws,* 713 F.2d at 692 (ninety-one days); *Norris v. Florida Department of Health and Rehabilitative Services,* 730 F.2d 682 (11th Cir. 1984) (ninety-one days). The evidence shows that plaintiff received her right-to-sue notice on Februry 22, 1986, and did not file her complaint until May 27, 1986, ninety-four days later. Although the ninety-day filing period is not jurisdictional and may be tolled, *Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1241 n. 2 (11th Cir.1982), plaintiff has not attempted to allege facts justifying tolling of the time limit, nor does the court's independent review of evidence reveal facts which require tolling of the limitation period. *Norris,* 730 F.2d at 683. Accordingly, plaintiff's claims under Title VII are barred by the ninety-day time limit.

### B. *Equal Pay Act*

Plaintiff alleges that while she was a Level I Auditor, she performed the same work as higher-paid male, Level II Auditors. In order to establish a prima facie case under the Equal Pay Act, plaintiff must show that she and the male Level II Auditors performed "equal work on jobs the performance of which requires equal skill, effort and responsibility ... under similar working conditions...." 29 U.S.C. § 206(d); *Schwartz v. Florida Board of Regents,* 807 F.2d 901 (11th Cir.1987). For purposes of the motion for summary judg-

ment only, defendants admit that plaintiff has alleged facts sufficient to create a fact question concerning the "equal work" requirement, and the court notes that there is testimony in plaintiff's deposition sufficient to create a fact question on this issue. However, defendants seek summary judgment on the basis of two of the statutory exceptions to the Equal Pay Act.

■ Under this act, the equal pay for equal work requirement does not apply if the employer can prove that a difference in pay is justified by: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. 29 U.S.C. § 206(d)(1); *Schwartz,* 807 F.2d at 907; *Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1036 (11th Cir.1985). Defendants must prove that the factor of sex provided no basis for the wage differential. *Schwartz,* 807 F.2d at 907.

■ With respect to the higher-paid, male Level II Auditors other than Bradshaw, the Supreme Court has recognized in dictum that the Equal Pay Act "contemplates that a male employee with 20 years' seniority can receive a higher wage than a woman with two years' seniority." *Corning Glass Works v. Brennan,* 417 U.S. 188, 204, 94 S.Ct. 2223, 2233, 41 L.Ed.2d 1 (1974). The evidence in this case may not be sufficiently detailed to establish the formal system which appears necessary to prove the "seniority system" defense to the Equal Pay Act. *See Morgado v. Birmingham-Jefferson County Civil Defense,* 706 F.2d 1184, 1189–90 (11th Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984); *E.E.O.C. v. Aetna Insurance Co.,* 616 F.2d 719, 724–26 (4th Cir.1980). However, defendants also assert the seniority or longevity of service reason as an informal, de facto system under the "factor other than sex" defense. *See, e.g., Kilpatrick v. E.H. Sweet,* 262 F.Supp. 561 (M.D.Fla.1967); *Brownlee v. Gay & Taylor, Inc.,* 642 F.Supp. 347, 361–62 (D.Kan.1986); *Salazar v. Marathon Oil Co.,* 502 F.Supp. 631, 636 (S.D.Tex.1980);

*Wheeler v. Armco Steel Corp.*, 471 F.Supp. 1050, 1053–54 (S.D.Tex.1979); *see also Pierce v. Duke Power Co.*, 811 F.2d 1505 (4th Cir.1987) (text available on Westlaw) (applying Equal Pay Act defenses to Title VII equal pay claims); *Branco v. Sargent & Lundy*, Case No. 85 C 8845 (N.D.Ill. Jan. 29, 1987) (text available on Westlaw) (applying Equal Pay Act defenses to Title VII equal pay claims).

The record shows that male Level II Auditors other than Bradshaw had extensive service with AT & T affiliates, that this seniority was reflected in their pay, and that plaintiff was aware of the importance of this longevity of service. When plaintiff was hired, her co-worker Armour had over twenty-eight years service, Mescher had over thirty-seven years service, Lytle had about thirty-one years service, and Graham over twenty-two years experience with the company affiliates. With respect to employees other than Bradshaw who transferred into plaintiff's Orlando group, Zimmerman had over twenty-seven years experience within the system when he transferred into the department, Kerwer had over twenty-eight years service, Cullerton had about twenty-two years longevity, and Arcomone had about fifteen years service with the company affiliates. At the time Arcomone entered the department, plaintiff had less than one and one-half years of experience with the company. Obviously, she had been through many fewer annual pay increases, and her salary consequently was lower than the senior employees. Thus, the facts amply support defendants' position that the higher position and pay afforded these employees was based upon their seniority or longevity of service.

Bradshaw was hired after plaintiff and, of course, seniority does not justify his higher salary. However, he was transferred into the group during a hiring and promotion freeze after the management position for which he was hired was eliminated. His transfer was pursuant to a company policy of placing qualified employees whose position had been eliminated in other jobs at the same salary rather than to downgrade or demote them. The courts and the Department of Labor have recognized that Congress intended to include the practice of "red circling," or paying higher wages to a particular employee for various reasons, in the "factor other than sex" defense. *See, e.g., Gosa v. Bryce Hospital*, 780 F.2d 917, 918–19 (11th Cir.1986); 29 C.F.R. § 800.146. Defendants' policy of paying transferred, qualified employees whose position has been eliminated their previous salary is not based upon sex, and appears reasonable in order to enhance the desireability of employment with AT & T and to provide security for employees, especially during this period of massive reorganization within the AT & T affiliates. Bradshaw's higher pay rate was determined pursuant to this reasonable, sex-neutral business policy, and, therefore, fits within the "factor other than sex" exception to the Equal Pay Act.

Thus, defendants have established that plaintiff's Title VII claim is barred by the ninety-day time limit, and they have established that the higher rates paid to plaintiff's co-workers were justified by factors other than sex, thus proving the § 2096(1)(iv) Equal Pay Act defense. Plaintiff has failed to produce any evidence, much less any evidence which raises a genuine issue of material fact as required by Rule 56(e).

Accordingly, it is ORDERED that defendants' motion for summary judgment is GRANTED. The clerk shall enter judgment for the defendants.

It is SO ORDERED at Orlando, Florida, this 16th day of July, 1987.