**RHEIN MEDICAL, INC., Plaintiff,**

v.

**Elmer KOEHLER, Defendant.**

**No. 93–538–CIV–T–17.**

United States District Court, M.D. Florida, Tampa Division.

June 19, 1995.

Peter Michael Cardillo, Broad & Cassel, Tampa, FL, for plaintiff.

Richard M. Hanchett, John Eamon Johnson, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for defendant.

### ORDER ADOPTING REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

This cause is before the Court on Report and Recommendation (hereafter R & R) issued December 21, 1994 (Docket No. 108); objections and reply thereto; Report and Recommendation issued May 17, 1995 (Docket No. 131); and the plaintiff's objections thereto, filed June 5, 1995 (Docket No. 136).

The R & R of December 21, 1994, was issued after evidentiary hearing and regarded the defendant's motion to dismiss of lack of personal jurisdiction (Docket No. 9) and motion to dismiss for improper venue or to transfer venue (Docket No. 8). The magistrate judge recommended that both motions be denied.

Thereafter, the defendant objected to the R & R (Docket No. 112). The plaintiff then sought an extension of time to respond to the

objections, until January 24, 1995, based on there representation that the parties had settled the case and were waiting for final execution of the settlement. (Docket No. 113).

On December 28, 1994, the defendant filed a motion to enforce the settlement, which the defendant asserted was reached on December 2, 1994, to be consummated by December 6, 1994 (Docket No. 109).

In response to the motion to enforce the settlement, the plaintiff failed to deny that there was a settlement, in fact they stated that there were agreements reached, which had not been announced in the motion to enforce, and, further, stated that the settlement agreement had not been drafted due to the plaintiff's counsel being "distracted by the death of his grandmother" (Docket No. 111). The plaintiff clearly stated that "the Plaintiff does not contest the fact that the parties reached an agreement."

The plaintiff indicated that they did not feel there was any need for ruling on the motion to enforce, but, if the Court felt compelled to rule on the motion, the plaintiff wanted an evidentiary hearing. However, the plaintiff failed to inform the Court of what issues could or should be addressed in the requested evidentiary hearing.

Based on the plaintiff's response, the Court did not act on the motion, because the plaintiff had clearly indicated that it was unnecessary and that the settlement would be consummated, since the plaintiff's counsel's "distraction" was at an end. The Court considered the word of the plaintiff to be reliable in this regard.

More than a month passed without any settlement being presented to the Court. Thereafter, on February 16, 1995, the defendant moved for an evidentiary hearing on his motion to enforce, based on the plaintiff's failure to communicate with the defendant or to otherwise finalize the settlement (Docket No. 114).

At this point, it was the Court's perception that the plaintiff shifted it's stance. Rather than addressing the motion to enforce and the allegations of its own failure to complete and execute the settlement, which it had previously admitted existed, the plaintiff agreed that an evidentiary hearing was required, again without indicating what issues plaintiff perceived as necessary for a hearing. Additionally, the plaintiff filed a reply to the defendant's objections to the December 21, 1995, R & R, the reply was almost two (2) months late in being filed. The plaintiff never sought leave of Court to file the out of time response.

At this juncture, the Court referred the motion to enforce settlement to Magistrate Judge Elizabeth A. Jenkins for further proceedings, including an evidentiary hearing (Docket No. 122). Therein, the Court stated:

> The Court is concerned about the shifting sands of the plaintiff's position in regard to the ostensible settlement agreement and whether or not sanctions may be appropriate in this case. The plaintiff has failed to oppose the motion to enforce, in fact has admitted that a settlement has been reached, but still contends that an evidentiary hearing is necessary. The Court agrees that a hearing is appropriate to the resolution of certain issues in this case, i.e. is there a settlement, has the plaintiff filed any pleadings in bad faith, whether or not there is a basis for this Court to consider the imposition of sanctions, either pursuant to Rule 11, Fed.R.Civ.P., or otherwise.

The magistrate judge held an evidentiary hearing on April 24, 1995, as directed by the Court. Pursuant to the hearing, the magistrate judge issued another report and recommendation on May 17, 1995 (Docket No. 131). The R & R recommended that: 1) the defendant's motion to enforce the settlement agreement (Docket No. 109) and motion to strike objections (Docket No. 120) be granted; 2) this Court find the plaintiff in violation of Rule 11 and assess a $500.00 fine to be paid equally by the plaintiff and its counsel Peter Cardillo to the Clerk of the Court; and 3) the plaintiff pay defendant reasonable costs, including attorney's fees, related to the motion to compel of February 24, 1995.

On May 26, 1995, the parties stipulated to the amount of costs to be paid to the defendant regarding the motion to compel, as addressed by the third recommendation of the R & R (Docket No. 133). This left the Court to consider the recommendations on enforce-

ment of settlement and assessment of sanctions.

On May 31, and June 1, 1995, the plaintiff filed "Notice of Settlement" (Docket No. 134) and "Amended Notice of Settlement" (Docket No. 135), respectively. The plaintiff therein notified the Court that "the parties have reached a settlement of this action." The plaintiff further indicated that it would not file objections to the portion of the R & R which recommend the granting of the motion to enforce settlement.

The notice and amended notice of settlement did indicate that the plaintiff objected to recommendation 2 of the R & R, assessment of Rule 11 sanctions, and that it would file objections thereto. On June 5, 1995, the plaintiff did in fact file said objections (Docket No. 136). Again, the plaintiff indicated that the only objections which it had to the R & R pertained to the awarding of Rule 11 sanctions and that it did not contest the granting of the motion to enforce settlement.

The objections to the imposition of sanctions is a very detailed, in fact a thirty-three (33) page, chronology of this case and proceedings therein. The plaintiff objects to the imposition of sanctions for failure to follow proper procedure and to the magistrate judge's finding of "improper purpose."

The Court finds no merit to the objections raised by the plaintiff. The magistrate judge adequately addresses the procedural issue in her R & R and the Court agrees with that portion of the report. Further, the Court does not find that the finding of "improper purpose" was clearly erroneous, rather it is clearly and adequately supported by the record before the judicial officer. Accordingly, it is

**ORDERED** that the report and recommendation of December 21, 1994, (Docket No. 108) be **denied,** as moot based on the announcement of settlement; the report and recommendation of May 17, 1995, (Docket No. 131) be **adopted** and **incorporated** by reference herein; the objections of the plaintiff be **overruled;** the defendant's motion to enforce settlement (Docket No. 109) and motion to strike (Docket No. 120) be **granted;** the plaintiff is **adjudged** in violation of Rule 11, Fed.R.Civ.P. and **assessed** a $500.00 fine, to be paid equally by the plaintiff and its counsel Peter Cardillo, who are **directed** to remit that sum to the Clerk of the Court on or before June 30, 1995; and the parties are **directed** to submit a final settlement agreement to the Court, upon which this cause may be dismissed, on or before June 30, 1995.

**DONE and ORDERED.**

### REPORT AND RECOMMENDATION

ELIZABETH A. JENKINS, United States Magistrate Judge.

Before the Court is a Motion to Enforce Settlement Agreement and memorandum in support filed on behalf of defendant Elmer Koehler (Koehler) (Dkt. 109), the Response filed by plaintiff Rhein Medical, Inc. (Rhein) (Dkt. 111), the Request for Oral Argument filed by Koehler (Dkt. 114) and related motions and matters addressed in the District Judge's order of referral dated March 29, 1995 (Dkt. 122) (Referral Order). Pursuant to the Referral Order, an evidentiary hearing was held on April 24, 1995 to address these issues.

Plaintiff filed this breach of contract action against defendant on April 1, 1993. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. To date, no answer has been filed by defendant due to a motion to dismiss on personal jurisdiction grounds filed early in this case. Resolution of the motion was delayed by a motion to disqualify defendant's attorney filed by plaintiff which was ultimately denied, including a request for Rule 11 sanctions. The procedural history of this case was extensively summarized in this Court's Referral Order and will not be repeated here. Suffice it to say, this case has been heavily litigated in two years on issues which have little to do with the contract dispute between the parties. After a lengthy evidentiary hearing on December 1, 1994 on the motion to dismiss, this court urged the parties to make every effort to settle the case. Apparently, the parties reached a settlement the following day but did not advise the Court.

Defendant contends that the parties reached a settlement on December 2, 1994 and that plaintiff has unreasonably refused to execute the written settlement agreement. Plaintiff agrees that a settlement was reached on December 2, 1994 but asserts that defendant is attempting to enforce a provision which was never agreed to between the parties.

Defendant has filed a transcript of an audio tape recording made at the conclusion of settlement negotiations on December 2, 1994 in which Rhein's Chairman, August Bee, stated the terms reached by the parties. (DX 1) Rhein agreed to pay Koehler $175,000 in return for Rhein and Koehler dismissing their claims pending in Florida and Missouri;[1] Koehler agreed to return stock purchased from Rhein and to release Rhein from claims Koehler had for additional stock warrants resulting from his employment with Rhein; and the parties agreed that $34,000 of the settlement proceeds (related to the stock and stock warrants) would be paid immediately to Koehler and the remaining $141,000 would be paid over five years, in quarterly installments.[2]

The essential terms of the settlement were agreed to by the parties on December 2, 1994, with the understanding that final details would be addressed in the written settlement agreement.

At the conclusion of the meeting, Rhein's counsel agreed to provide settlement documents to Koehler's counsel by December 6, 1994.[3] A proposed written agreement was not submitted by Rhein to Koehler until January 3, 1995, however. Peter Cardillo, Rhein's attorney, experienced the loss of his grandmother on December 5th or 6th and stated that this event prevented him from submitting the paperwork until that date. In the interim, this court (unaware that a settlement had been reached), entered the Report and Recommendation on December 21, 1994 recommending that the motion to dismiss and related claims for relief be denied. Defendant's motion to enforce settlement agreement was filed a week later on December 28, 1994.

Beginning on January 3, 1995 and continuing through April 19, 1995, a series of letters and proposed written settlement agreements were exchanged between counsel for the parties. The provision which Rhein views as unenforceable was included in a proposed settlement agreement sent to Rhein's counsel by Koehler's counsel on January 11, 1995. This provision, added as paragraph 14 to the proposed agreement, provided:

> In the event that Koehler dies before the receipt of the final payment under this Agreement, then all subsequent payments shall be made to the person or party as designated by Koehler.

A prior settlement agreement drafted by Koehler's counsel attached to the letter of January 6, 1995 did not contain this provision. However, it appears that Rhein was well aware that Koehler's St. Louis attorney would be reviewing the proposed settlement, and the provision concerning the contingent beneficiary cannot have come as a complete surprise to Rhein. Apparently, paragraph 14 was added after the St. Louis attorney (who specializes in tax and estate matters) reviewed the proposed settlement agreement.

Rhein did not respond to the revisions in the January 11, 1995 agreement until February 23, 1995, when Rhein's counsel wrote Koehler's counsel that both of the proposed changes were completely new terms that had not even been discussed by the parties and

---

1. As noted in the Report and Recommendation dated December 21, 1994, Koehler filed an age discrimination complaint against Rhein in Missouri after he was terminated by Rhein. (Dkt. 108)

2. The parties agree that Bee's reference in the transcript to a twelve-year pay-out period was a misstatement and that it was a five-year period instead.

3. According to defendant's motion, Rhein had some misgivings about the amount of the settlement and its counsel communicated this to Rhein's counsel shortly after the conference ended. However, Rhein subsequently agreed to honor the settlement, as recorded on the audio tape. These events were not addressed at the evidentiary hearing and are not relevant as both sides agree that the transcript accurately states the terms of the settlement.

were therefore rejected.[4] Koehler responded by letter dated February 27, 1995, stating that "it simply cannot be possible that the position of your client is that the settlement amount need only be paid in the event that Koehler 'outlives' the temporal terms of the agreement." Their next communication was on March 20, 1995 when Koehler's counsel sent a settlement agreement executed by his client to Rhein's counsel on March 20, 1995. Rhein responded on April 19, 1995 by reiterating its rejection of the provision in paragraph 13 of the proposed settlement and its willingness to enter into a settlement agreement which incorporated the terms agreed to between the parties on December 2, 1994.

*Discussion*

 Federal district courts have inherent power to summarily enforce settlement agreements entered into by party litigants in a pending case. *Kent v. Baker, III,* 815 F.2d 1395, 1398 (11th Cir.1987) (citation omitted). The contract law of the forum state is applied in a diversity action in determining the construction and interpretation of the agreement. *See Schwartz v. Fla. Bd. of Regents,* 807 F.2d 901, 905 (11th Cir.1987).

 The party seeking to establish assent by the opposing party to the settlement has the burden of proving such assent. Though every detail need not be solidified in order to be enforceable, the parties "must reach mutual agreement on every essential element of the proposed settlement." *Rondolino v. Northwestern Mut. Life Ins. Co.,* 827 F.Supp. 729, 730 (M.D.Fla.1993) (citations omitted). Settlements are highly favored and will be enforced whenever possible. *Robbie v. City of Miami,* 469 So.2d 1384, 1385 (Fla.1985).

 The addition of paragraph 14 to the settlement agreement simply makes explicit what defendant's personal representative would have had the right to do in enforcing the settlement agreement if defendant died before receiving the $175,000 which plaintiff promised to pay in settlement of their claims. *See generally* Fla.Stat. § 46.021 (causes of

action do not die with the person but may be prosecuted in the name of the person prescribed by law); *Reed by and through Reed v. U.S.,* 717 F.Supp. 1511, 1517 (S.D.Fla.1988) (death of infant did not excuse government's performance under settlement agreement reached prior to infant's death although final details of agreement remained to be resolved), *aff'd,* 891 F.2d 878 (11th Cir.1990). Paragraph 14 does not change or enlarge any of the terms of the agreement entered into on December 2, 1994.

John Bee, Rhein's President, testified at the evidentiary hearing that the settlement amounts were structured to be similar to the payments Koehler would receive as a consultant pursuant to his employment contract with Rhein which was for a five-year term. (PX 1.) Rhein takes the position that the amount of the settlement was based upon Koehler's future earnings under the employment contract and that it should not be forced to pay those amounts if he dies.

This argument is disingenuous as there is no evidence before this court that Rhein's obligation to pay Koehler the amounts agreed upon in settlement was a contingent obligation. An employment agreement and a settlement agreement are two different legal entities. Moreover, the settlement covered not only Rhein's breach of contract action against Koehler but also Koehler's age discrimination complaint in Missouri. If the settlement agreement were ambiguous, then the testimony of John Bee and the employment contract might be relevant. However, the agreement reached on December 2, 1994 is not ambiguous.

Nor does the agreement lack a material term in failing to address the prospect that Koehler might die before the final payment is made. Both parties were acutely aware of his medical condition because defendant's prostate cancer was discovered during a physical he took at Rhein's request for insurance purposes prior to or at the time the employment contract was signed.

---

4. Another provision in the January 21, 1995 draft submitted by Koehler was eventually dropped

and is not material to the current dispute.

Accordingly, it is recommended that defendant's Motion to Enforce Settlement Agreement (Dkt. 109) be granted.

A separate matter referred is defendant's Motion to Strike Rhein Medical Inc.'s Response to Elmer Koehler's Objections to the Magistrate's Report and Recommendation (Dkt. 120). Plaintiff's response was due on or before February 25, 1995, and was not filed until March 9, 1995. The Motion to Strike should be granted as plaintiff's response was untimely.

*Sanctions*

*Rule 11*

This court noted the "shifting sands" in plaintiff's position regarding settlement in the Referral Order and directed that the evidentiary hearing address, *inter alia*, whether plaintiff's conduct warranted imposition of Rule 11 sanctions. At the hearing, this court also raised the issue of sanctions under 28 U.S.C. § 1927.

Defendant contends that he incurred approximately $1300 in attorney's fees as a result of plaintiff's dilatory conduct in refusing to enter into the written settlement. Plaintiff does not take issue with the amount of fees claimed by defendant but maintains that its conduct since December 2, 1994 has been wholly proper. Plaintiff points out that until the January 11, 1995 settlement agreement was received from defendant's counsel, the only differences between the two parties' settlements agreements were minor points capable of resolution.

Only written submissions are within the scope of Rule 11. The "safe harbor" provisions of Rule 11, as amended December 1, 1993, do not apply to show cause hearings initiated by the court which describe the specific conduct that appears to violate the rule. *See* Rule 11(c)(1)(B), Fed.R.Civ.P.

The conduct addressed in the Referral Order raises the issue of whether plaintiff, or plaintiff's counsel, filed certain papers with this court "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11(b)(1).

The written submissions identified in the Referral Order include plaintiff's response to the motion to enforce settlement agreement (Dkt. 111). In that response filed on January 4, 1995, Mr. Cardillo stated that "Plaintiff does not contest the fact that the parties reached an agreement.... However, if the Court deems disposition necessary, plaintiff requests an evidentiary hearing." (Dkt. 111, p. 2). Plaintiff has not explained the apparent inconsistency in this position.

On January 17, 1995, plaintiff filed a Motion for Extension of Time to File Objections to the December 21, 1995 Report and Recommendation which stated, *inter alia*, that the "parties have reached a settlement in this action and are awaiting final execution of a settlement agreement." (Dkt. 113.) This motion was signed by "Katherine Castor" for Mr. Cardillo, counsel of record. By that date, plaintiff's counsel should have been aware of the January 11, 1995 draft settlement agreement forwarded by defendant's counsel which contained the disputed paragraph 14. Yet Rhein stated that a settlement had been reached and provided no indication of a dispute over the terms.

■ The most logical conclusion to be drawn from plaintiff's submissions on January 4, 1995 and January 17, 1995 is that they were filed for the purpose of delay and to obtain some strategic advantage for Rhein. Such conduct violates Rule 11. *See generally Matter of U.S. Offshore, Inc.,* 753 F.Supp. 86, 92 (S.D.N.Y.1990) (Rule 11 violated where party's arguments appeared to have been motivated by a desire to forestall complying with arbitration award).

If a Rule 11 violation is found, the sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others situated" and may include monetary or nonmonetary sanctions. Rule 11(c)(2).

■ An appropriate deterrent for the Rule 11 violation is a $500 fine payable to the Clerk of Court, half to be paid by Rhein and the other half by Rhein's attorney Peter Cardillo who has had primary responsibility for representing plaintiff before this court as

to the matters addressed in this Report and Recommendation.

*Rule 37*

Defendant also seeks sanctions for plaintiff's failure to comply with a request for a copy of the audiotape of the settlement conference on December 2, 1994.[5] The record indicates that Koehler's counsel had requested a copy of the audiotape and later served a request to produce in late December 1994. When informal efforts to resolve the dispute were unsuccessful, Koehler filed a Motion to Compel and for Sanctions on February 24, 1995 (Dkt. 115).

Rhein filed a response on March 9, 1995 stating the motion was moot because Rhein had provided a copy of the requested audio tape on March 6, 1995 (Dkt. 118). The response provided no explanation for the delay in responding to defendant's request.

■ The fact that Rhein finally provided the tape after a motion to compel was filed does not make its position "substantially justified." Nor do other circumstances make an award of sanctions unjust. Although the motion to compel is moot, the motion for sanctions is not. Koehler made a good faith effort to resolve the dispute without court action and Rhein's delay in providing the tape is inexcusable. That such a simple request could go unanswered more for than a month is further evidence of Rhein's dilatory conduct. Koehler is entitled to his reasonable expenses, including attorneys fees, incurred in filing the motion to compel. Rule 37(a)(4)(A), Fed.R.Civ.P. The parties shall endeavor to stipulate to the amount but, if unable to do so, defendant shall file an affidavit of fees and expenses within fifteen (15) days and plaintiff may file a counter-affidavit thereafter.

It is therefore RECOMMENDED that:

1) Defendant's Motion To Enforce Settlement Agreement (Dkt. 109) and Defendant's Motion To Strike Rhein Medical Inc.'s Response to Elmer Koehler's Objections To The Magistrate's Report and Recommendation On Koehler's Motion To Dismiss For Lack Of Personal Jurisdiction And Motion To Dismiss For Improper Venue Or To Transfer Venue (Dkt. 120) be GRANTED;

2) This court find plaintiff in violation of Rule 11 and assess a $500 fine, payable to the Clerk of Court with plaintiff and its counsel, Mr. Cardillo, each paying one-half of the amount; and

3) Plaintiff pay defendant the reasonable expenses, including attorney fees, incurred in filing the Motion to Compel dated February 24, 1995.

Dated: May 17, 1995.

---

**5.** This motion has not been referred but is more appropriately addressed in conjunction with the other motions referred by this court.