[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 08 2001
THOMAS K. KAHN
CLERK

_____

No. 99-4225

_____

D. C. Docket No. 90-06863-CIV-UUB

WILLIAM WATERS AND LINDA BARTHOLOMEW,
individually and on behalf of all those similarly situated,

Plaintiffs-Appellees,

ABALAHIN, et al., individually and on behalf of all those similarly situated,

Plaintiffs-Appellees-Cross-Appellants,

versus

INTERNATIONAL PRECIOUS METALS CORPORATION,
MULTIVEST, INC., et al.,

Defendants-Appellants-Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(January 8, 2001)**

Before EDMONDSON, WILSON, and MAGILL*, Circuit Judges.

_____
*Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

MAGILL, Circuit Judge:

This appeal arises from a class action lawsuit brought by customers (the "Class") of MultiVest Options, Inc., a commodity futures brokerage firm, against MultiVest, its parent companies, and James Grosfeld, who owned and controlled MultiVest. The lawsuit alleged that the defendants defrauded the Class by soliciting and stimulating excessive trading in commodities options. After the parties reached a settlement agreement (the "Agreement"), the Class brought suit in district court, claiming that the defendants violated the Agreement by refusing to pay Class members who either filed untimely or timely but incomplete claims. The district court concluded that the Agreement barred Class members who filed untimely claims from receiving distributions, but also held that the defendants must pay timely but incomplete claims. The parties cross-appealed to this court, and we affirm in part and reverse in part, holding that the Agreement bars Class members who either filed untimely or timely but incomplete claims from receiving distributions out of the settlement fund.

## I.

After seven years of discovery and a five-month jury trial, the parties signed the Agreement on the eve of closing arguments. Under the Agreement, the defendants placed $40 million in a settlement fund. The Agreement provides for a reversionary fund, meaning that all funds not used to pay the Class, Class counsel,

and administrative expenses revert back to the defendants.

The Agreement required Class members to follow certain procedures to receive distributions from the settlement fund: "Within sixty (60) days after mailing of the Notice, each Person claiming to be an Authorized Claimant shall be required to submit to the Settlement Administrator a completed Proof of Claim and Release and all of his or her Monthly Statements from Multi[V]est Options, Inc." The Notice sent to all Class members restated these requirements:

> If you are a settlement class member, to be eligible to participate in the distribution of the settlement fund, you must complete and sign the attached Proof of Claim and Release form and send it, together with all your Monthly Statements from Multi[V]est Options, Inc. . . . by prepaid first class mail post-marked on or before [April 15, 1997].

The Agreement advised Class members who were missing Monthly Statements to place a toll free call to the Settlement Administrator (the "Administrator"), who would mail Class members any missing statements. The Administrator subtracted $50 from distributions to Class members who requested Monthly Statements. The Agreement further provided that the Administrator's mailing of Monthly Statements did "not relieve the Claimants of their obligations to submit a Proof of Claim and Release together with the related documents required by the Proof of Claim and Release which documentation shall be satisfied by the Monthly Statements received from the Settlement Administrator if

3

appropriate." The Agreement required the Administrator to

> review all Proofs of Claim and Releases and Monthly Statements submitted and make such corrections to the Proof of Claim and Release as may be required to ensure that they accurately reflect the information contained in the Settlement Class Member's Monthly Statements. Proof of Claim and Release forms and Monthly Statements which are timely submitted by Claimants and are capable of correction and completion by the Settlement Administrator to accurately reflect the information on such Claimants Monthly Statements shall be so corrected and completed and not rejected.

The Agreement instructs Class members who wish to appeal a decision of the Administrator to notify the Administrator of the member's grounds for contesting the decision and request review by a district court. The district court held multiple hearings over five days to review the Agreement before granting preliminary approval and discharging the jury. On April 2, 1997, the court gave its final approval to the Agreement.

Of the 20,600 Class members, 6603 claims were filed with the Administrator. The Administrator placed the filed claims in the following categories: (a) 5040 Class members filed Proofs of Claim with attached Monthly Statements within 60 days; (b) 1171 members filed timely Proofs of Claim with missing or illegible Monthly Statements; (c) 104 members filed timely Proofs of Claim supported by late-filed Monthly Statements; (d) 212 members filed untimely Proofs of Claim that would otherwise be eligible; (e) 16 members filed untimely

claims that have other unresolved deficiencies; and (f) 46 members filed claims that are intrinsically ineligible.

Class members who were refused payment because they either filed untimely or timely but incomplete claims appealed the Administrator's decision to the district court. On October 28, 1997, the district court held that Class members who timely filed their Proofs of Claim but did not attach Monthly Statements were nevertheless entitled to receive distributions. On January 14, 1998, the district court held that Class members who did not timely file their Proofs of Claim were barred from recovery. The court also held that allowing Class members who filed untimely claims to individually appeal the dismissal of their claims to the district court "would unnecessarily diminish the utility of class action treatment in this case."

The district court granted Class counsel's motion to create a subclass (the "Subclass") of Class members who had filed untimely claims, and to appoint counsel to represent the Subclass on appeal. Additionally, the district court awarded Class counsel about $16 million in fees and expenses. This court upheld the fee award in Waters v. International Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) ("Waters I").

On January 26, 1999, the district court directed entry of judgment pursuant

to Federal Rule of Civil Procedure 54(b) with respect to the court's October 28 and January 14 orders. On February 5, 1999, the Class and the defendants each filed Notices of Appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

The Class argues that this court cannot review the district court's decision because, by signing the Agreement, the defendants waived their right to appeal. The Class notes that although the Agreement specifically allows Class members to contest the Administrator's determinations, it fails to provide the defendants with such a right. The Class supports its waiver argument by relying on case law that purportedly holds that a party that enters into a settlement agreement must expressly reserve the right to appeal any specific issues. See, e.g., Shores v. Sklar, 885 F.2d 760 (11th Cir. 1989).

The defendants did not waive their ability to appeal the district court's decision. Nowhere does the Agreement state that the defendants waived their appellate rights by signing the Agreement. This court rejects the proposition that a party may be barred from appealing a settlement agreement just because the party failed to specifically reserve a right of appeal. The case law relied upon by the Class in support of this proposition is inapposite. In Shores, for instance, this court simply held that a party who consents to an entry of judgment cannot later appeal

6

that judgment. 885 F.2d at 762. By contrast, the defendants here are appealing post-settlement adjudications by the district court. In any event, appellate courts routinely review disputes about the meaning of settlement agreements without requiring that the appealing party expressly reserved a right of appeal in the agreement. See, e.g., Jeff D. v. Andrus, 899 F.2d 753 (9th Cir. 1990); see also Reynolds v. Roberts, 202 F.3d 1303, 1312 (11th Cir. 2000) (holding that a consent decree's waiver-of-appeal provision did not bar an appeal when the district court's judgment deviated from the terms of the decree). Therefore, we turn to the merits of the appeal.

**A.**

The district court held that Class members who timely filed their Proofs of Claim but did not attach Monthly Statements should nevertheless receive distributions from the settlement fund. Relying on § 6.4(c)-(d), the court found that the Agreement contemplated that the Administrator would correct filing deficiencies such as Class members' failure to attach Monthly Statements to their Proofs of Claim. We review the district court's construction of the Agreement de novo. See Schwartz v. Florida Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987). The Agreement is a contract, so our analysis is governed by principles of general contract law. See id. This court gives the Agreement's terms their "plain and

7

ordinary meaning" and will not add or subtract language from a clearly worded agreement. Id.

To receive a distribution, the unambiguous language of the Agreement required Class members to: (1) file a Proof of Claim with the Administrator; (2) attach all Monthly Statements to the Proof of Claim; and (3) complete the filing within sixty days after the mailing of the Notice. The Agreement sets forth these requirements in ten separate instances. For example, § 6.4(a) of the Agreement provides: "Within sixty (60) days after the mailing of the Notice each Person claiming to be an Authorized Claimant shall be required to submit to the Settlement Administrator a completed Proof of Claim and Release and all of his or her Monthly Statements . . . ."

The district court, however, concluded that § 6.4(c) of the Agreement vitiated Class members' responsibility to attach Monthly Statements to their Proofs of Claim. Section 6.4(c) provides:

> The Settlement Administrator shall review all Proofs of Claim and Releases and Monthly Statements submitted and make such corrections to the Proof of Claim and Release as may be required to ensure that they accurately reflect the information contained in the Settlement Class Member's Monthly Statements. Proof of Claim and Release forms and Monthly Statements which are timely submitted by Claimants and are capable of correction and completion by the Settlement Administrator to accurately reflect the information on such Claimants Monthly Statements shall be so corrected and completed and not rejected.

8

The district court held that § 6.4(c) required the Administrator to correct Class members' claims by attaching their Monthly Statements for them. We conclude, however, that § 6.4(c) merely required the Administrator to make corrections to the Proofs of Claim to ensure conformity with Monthly Statements that were timely submitted. Indeed, § 6.4(c) contemplates the Administrator reviewing "all Proofs of Claim and Releases and Monthly Statements submitted," suggesting that the Administrator would review only those Monthly Statements that the parties submitted. This interpretation is supported by § 6.4(c)'s reference to "Proofs of Claim and Release forms and Monthly Statements which are timely submitted by Claimants." Thus, § 6.4(c) demonstrates that the Agreement required Class members to file their own Monthly Statements as a condition to the Administrator reviewing their claims for possible correction.

In deciding to require the Administrator to make distributions to Class members who filed timely but incomplete claims, the district court also relied on § 6.4(d), which states:

> Notwithstanding any other provision of this Stipulation, if neither the Claimant nor MultiVest Options, Inc. is able to provide copies of Claimant's Monthly Statements, the Settlement Administrator may consider other documentation provided by MultiVest Options, Inc. or Plaintiffs' Settlement Counsel to ascertain whether the information required to establish any Claimant's claim is otherwise available.

However, § 6.4(d) merely provides that, if a Class member's Monthly Statements

9

could not be located, other documents could be used to establish the Class member's claim. In no way does § 6.4(d) alter the Agreement's repeated requirement that Class members themselves attach Monthly Statements to their Proofs of Claim.

Our holding that the Agreement's unambiguous language required Class members to attach Monthly Statements to their Proofs of Claim makes it unnecessary to address the Class's claim that the Agreement is ambiguous on this point, thereby requiring this court to adopt the most reasonable interpretation of the Agreement. We therefore reject the Class's invitation to inquire into the need for Class members to file their own Monthly Statements, as opposed to simply allowing the Administrator to attach the Monthly Statements himself. Where the parties thought it important enough to include in the Agreement a requirement that Class members attach Monthly Statements to their Proofs of Claim, we need inquire no further. In sum, the Class, "having reaped the benefits of their bargain in settling the class action suit, cannot expect the court to renegotiate on their behalf the terms of an agreement concluded after arms-length negotiations." Waters I, 190 F.3d at 1300.

The Class also argues that allowing Class members who failed to attach Monthly Statements to their Proofs of Claim to receive distributions from the

10

settlement fund is supported by the doctrine of substantial performance. The Class contends that they substantially performed their obligations under the Agreement by filing their Proofs of Claim and consenting to have $50 deducted from their recovery for using the Administrator to retrieve their Monthly Statements. However, merely filing a Proof of Claim and agreeing to pay the $50 fee for retrieval of missing Monthly Statements is not equivalent to what the parties bargained for. See Lazovitz, Inc. v. Saxon Constr., 911 F.2d 588, 592 (11th Cir. 1990) (stating that the doctrine of substantial performance requires performance that "'is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price'") (citation omitted). The parties evidently considered the time limit for submitting filings to be quite important, as evidenced by the Agreement's repeated recitations of the sixty-day limit. Thus, the Class's substantial performance argument fails.

The district court also allowed recovery by Class members who untimely filed their Monthly Statements. The district court relied on § 6.4(d), which states that the Administrator "shall provide Claimants with a reasonable time to cure any defects on his/her Proof of Claim and Release." The court apparently believed that § 6.4(d) allowed Class members time beyond the Agreement's sixty-day limit to send the Administrator their Monthly Statements. However, § 6.4(d) simply

11

required the Administrator to give Class members extra time if they incorrectly filled out their Proofs of Claim; nowhere does the Agreement allow Class members extra time to file Monthly Statements. Accordingly, we reverse the district court's decision to allow distributions to Class members who filed untimely Monthly Statements.

**B.**

The Subclass appeals the district court's holding that Class members who filed their Proofs of Claim after the sixty-day period elapsed are not entitled to contest the rejection of their claims. The Subclass points to § 6.4(e), which gives Class members whose claims were rejected by the Administrator the right to appeal. The Subclass attempts to bolster its argument by relying on several cases that hold that judicial consideration may be given to the reasons for untimely filing by individual class members. See, e.g., Burns v. Elrod, 757 F.2d 151 (7th Cir. 1985). The Subclass also notes that courts have allowed claims received after expiration of the deadline for submission. See, e.g., Grace v. City of Detroit, 145 F.R.D. 413 (E.D. Mich. 1992).

The district court acknowledged that it was aware of cases holding that a district court has the equitable power to accept late claims. Nevertheless, the court decided that, in this case, "the acceptance of late claims would be entirely

inconsistent with the intent of the parties in entering into the Settlement Stipulation." Although the district court conceded that § 6.4(e) does not except late-filed claims, § 6.4(e) must be read together with the rest of the Agreement, which repeatedly states that untimely claims are "forever barred from receiving any payment." Allowing Class members who filed untimely Proofs of Claim to appeal individually the Administrator's decision would violate the intent of the Agreement, given its emphasis on timely filing. Moreover, permitting individual appeals would diminish the utility of class action treatment in this case. See Guthrie v. Evans, 815 F.2d 626, 629 (11th Cir. 1987) (dismissing a class member's appeal of a settlement agreement, in part because "[i]f each class member could appeal individually, the litigation could become unwieldy" and individual appeals "would defeat the very purpose of class action lawsuits"). Therefore, the district court correctly ruled that the Subclass may not appeal the Administrator's rejection of untimely claims.

## III.

We AFFIRM the district court's refusal to allow Subclass members to individually appeal the Administrator's rejection of untimely filed claims. We REVERSE the district court's holding allowing the claims of Class members who did not attach Monthly Statements to their Proofs of Claim or who submitted their

13

Monthly Statements after expiration of the sixty-day limit.