[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 22, 2009
THOMAS K. KAHN
CLERK

No. 07-13322

_____

D. C. Docket No. 04-81200-CV-DTKH

F.W.F., INC.,
a foreign corporation,
GERALD ABRAMS,

Plaintiffs-Appellants,

versus

DETROIT DIESEL CORPORATION,
a Delaware corporation,
JOHNSON AND TOWERS, DELAWARE, INC.,
a Delaware corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 22, 2009)

Before BIRCH and MARCUS, Circuit Judges, and FORRESTER,[*] District Judge.

_____

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of
Georgia, sitting by designation.

MARCUS, Circuit Judge:

Plaintiffs-Appellants F.W.F., Inc. and Gerald Abrams (collectively, "F.W.F."), the owners of the M/Y Lady Jane, appeal from the district court's final order construing a settlement agreement between F.W.F. and Defendant-Appellee Detroit Diesel Corporation, the manufacturer of the engines on F.W.F.'s vessel. Specifically, the district court held that neither party had materially breached the settlement agreement. On appeal, F.W.F. argues that the district court erred in construing the settlement agreement by: (1) applying general federal maritime law; and (2) interpreting the scope of Detroit Diesel's obligations to exclude the payment of exhaust system and propeller modifications. After careful review, we affirm.

We review the district court's construction of a settlement agreement de novo. Waters v. Int'l Precious Metals Corp., 237 F.3d 1273, 1277 (11th Cir. 2001). We also review a conflict-of-laws issue de novo. Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc., 485 F.3d 1233, 1239 (11th Cir. 2007).

The essential facts are these. In June 2001, F.W.F. purchased the M/Y Lady Jane, a 65-foot yacht, and paid additional money for an upgrade to 1800-horsepower 16V 2000 M90 diesel engines manufactured by Detroit Diesel. Because these engines did not operate as warranted upon delivery and because

2

Detroit Diesel was unable to correct the problem, F.W.F eventually sued Detroit

Diesel and the yacht broker for damages in the United States District Court for the

Southern District of Florida. Detroit Diesel thereafter determined that the port

engine had a defect, and the parties focused the lawsuit on the measure of

damages.

During mediation, the parties reached agreement and jointly drafted a

memorandum of settlement (the "Settlement Agreement"), providing in relevant

part:

> [I]t is hereby stipulated and agreed between said parties that settlement
> has been reached as follows:
>
> 1.) Detroit Diesel to install 2 new factory built 2000HP 16V 2000
> [M91 engines], including:
> A. All new gears and accessories for engines[;]
> B. All costs for install including all accessories[.]
> . . . .
> 4.) Detroit Diesel to pay for shipyard cost for removal of engines,
> and all accessories[.]
> . . . .
> 6.) Detroit Diesel to pay up to and including $150,000 in attorneys
> fees and costs. Invoices to be provided [within] 60 days from
> November 18, 2005.
> 7.) Detroit Diesel to pay up to and including $60,000 of expert
> technical fees and costs. Invoices to be provided [within] 60 days
> from November 18, 2005[.]
> . . . .
> 13.) Detroit Diesel to grant a 5[-]year warranty to Plaintiffs
> commencing after installation and successful sea trial of vessel
> engines[. . . .]

3

After the parties signed the agreement and stipulated to dismissal of the cause without prejudice, the district court judge dismissed the case, but retained jurisdiction to enforce the Settlement Agreement.

As is sadly common in matters of this kind, issues subsequently arose regarding the parties' rights and obligations under the agreement, including: (1) whether Detroit Diesel's promise to pay all costs to install the new engines included the payment of costs to modify the exhaust system, install new propellers, and perform any other work necessary for the Lady Jane to successfully pass a sea trial; and (2) whether Detroit Diesel had met its obligation to pay attorneys' and expert fees and costs. To resolve these issues, F.W.F. ultimately moved the district court to enforce the Settlement Agreement. Thereafter, the district court referred the matter to a magistrate judge for a report and recommendation ("R&R").

In the R&R, the magistrate judge in large part recommended that F.W.F.'s motion be denied. Specifically, the magistrate judge determined that Detroit Diesel's promise to pay for all new accessories "does not include an exhaust system or propellers," and thus that Detroit Diesel had not committed an anticipatory breach of paragraphs 1 and 4 of the Settlement Agreement. (Report

4

and Recommendation As to Plaintiffs' Motion to Enforce Settlement Agreement ("R&R") at 41.) The magistrate judge did find, however, based on materials submitted subsequent to the filing of the motion, that Detroit Diesel owed F.W.F. approximately $16,000 in expert fees. (R&R at 67.) But the magistrate judge expressly noted that Detroit Diesel's previous failure to pay this amount of fees did not constitute a material breach of the Settlement Agreement. (R&R at 66.)

The district court adopted the R&R in whole, and entered its judgment for Detroit Diesel accordingly. This timely appeal follows.

## I.

As an initial matter, we are unpersuaded by F.W.F's claim that the district court erred in holding that the Settlement Agreement arose under federal maritime law, because even if it did, the result of this case would still be the same under Florida law. It is well-established that a contract for the original construction of a vessel arises under non-maritime, state law, while an agreement to repair a vessel is a federal maritime contract. F.W.F. argues that because it rejected the boat upon delivery (even though it used the boat in its original state before suing for repairs), its dispute is over the original construction of the vessel, rather than its repair, and thus arises under Florida law. This Court has had occasion to analyze the applicability of maritime law in Hatteras of Lauderdale, Inc. v. Gemini Lady, 853

5

F.2d 848, 850 (11th Cir. 1988), where the seller of a yacht sought damages from a buyer who allegedly had agreed orally to additional customizing, but disputed the existence of the alleged oral contract and refused to pay the seller's additional bill. There, this Court rejected the application of maritime jurisdiction, holding that:

> [The buyer's] intent was for this vessel to be customized according to its specifications in order that the Gemini Lady would meet [the buyer's] needs. Until the customization was completed [the buyer] would not be satisfied as the Gemini Lady would not be in the "condition to function as intended." [The Francis McDonald, 254 U.S. 242, 245 (1920).] If the yacht originally had been in the condition to function as desired by [the buyer] the customization would never have been ordered. We conclude that all of the work was completed as a part of the sale and/or construction of a new vessel, and therefore it does not invoke the maritime jurisdiction of the federal courts.

Id. at 851. As applied here, it is arguable that the Lady Jane did not perform "as intended" upon delivery because the engines did not produce the specified 1800 horsepower or reach 2300 engine revolutions per minute. On the other hand, F.W.F. was able to, and did use the vessel for several years before repairs were made, and, therefore, the Lady Jane arguably performed "as intended." If the Lady Jane performed "as intended," then federal maritime law applies.

We need not resolve this question today, because even if non-maritime law governed the dispute between the parties, F.W.F.'s claims would not be affected. F.W.F. asserts prejudice primarily on the ground that attorneys' fees and costs are

not permitted under federal maritime law, but that if non-maritime law governed, it would be entitled to attorneys' fees and costs for moving to enforce the Settlement Agreement. (See App'ant Br. at 44-45; Reply Br. at 28, 31.) But even assuming that F.W.F. conceivably could recover fees for pursuing its motion under Florida law, F.W.F. would only be entitled to these fees if it were a "prevailing party" in this endeavor. See Pepper's Steel & Alloys, Inc. v. United States, 850 So.2d 462, 467 (Fla. 2003) (holding in the insurance context that "where an insured sues its insurer for coverage under a policy and the parties later contest whether they have reached a settlement, section 627.428 allows a prevailing insured to be awarded the attorneys' fees incurred in litigating that issue.") (emphases added). Here, however, as the district court plainly concluded -- and as we agree -- Detroit Diesel has not materially breached the Settlement Agreement. In fact, F.W.F. does not even argue that it prevailed on the motion to enforce, instead contending that it is a prevailing party simply because the parties entered into the original Settlement Agreement. But that Settlement Agreement did not resolve the instant dispute -- which involves F.W.F.'s subsequent motion to enforce the Settlement Agreement -- and the parties decidedly have not reached a settlement on this motion. Because F.W.F. is not a prevailing party in its motion to enforce the Settlement Agreement, it cannot be entitled to any attorneys' fees, regardless of the applicable law.

7

Moreover, as Detroit Diesel argues and F.W.F. has not contested, the rules of contract interpretation under federal maritime and Florida law are identical, and therefore, would not affect the district court's interpretation of the Settlement Agreement.  See Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1118 n.2 (11th Cir. 1990) ("choice of law questions can be avoided if the laws of the different jurisdictions lead to identical results").  Thus, the district court's application of maritime law to the motion, even if error, could not and did not prejudice F.W.F. in any way.

## II.

Turning to the merits of F.W.F.'s motion, we reject F.W.F.'s claim that the Settlement Agreement requires Detroit Diesel, while upgrading the defective engines, to pay for all costs of installation, including costs to replace the exhaust system and propellers F.W.F. deems necessary for the new engines' proper functioning.  The plain language of paragraphs 1 and 4 of the Settlement Agreement provide that Detroit Diesel agreed to pay the costs to repair the Lady Jane, including the costs for removal of the existing engines, gears and "accessories," and all costs for installation of the new engines, gears and "accessories."  This language does not, however, allow for the term "accessories" to be interpreted so broadly as to include still other significant and distinct parts of

8

the vessel, such as the exhaust system and propellers. Rather, the term "accessories," as used in the Settlement Agreement, clearly refers to parts that are "accessory" to the engines -- indeed, the subsections addressing "accessories" fall under the larger section addressing "engines." Further, in common parlance, "accessories" are typically minor and ancillary to a larger system, rather than separate systems in and of themselves.[1]

Nor is there is anything helpful in paragraph 13. That paragraph simply says that Detroit Diesel will "grant a [five-year] warranty to Plaintiffs commencing after installation and successful sea trial of vessel engines." Under the plain language, Detroit Diesel's obligations do not kick in until <u>after</u> a successful sea trial. Notably, it does not make Detroit Diesel responsible for a successful sea trial in the first instance.

F.W.F. also says that since the Settlement Agreement "makes no provision for the other party to pay anything," then F.W.F. need not pay a dime for anything -- but this proves too much. As the magistrate judge reasoned:

> If this Court were to adopt Plaintiffs' interpretation, it would not only rewrite the contract, but would possibly render the settlement agreement too indefinite for enforcement. For example, would Defendant be in breach of the settlement agreement if they refuse to pay for the

---

[1] At oral argument, F.W.F. conceded that the term "accessories" could not be read to include the propellers and exhaust system.

9

> modification of the vessel's fuel system, the resurfacing of its hull, or any other work in which Plaintiffs, at their fancy, deem necessary for the engines and vessel to pass a sea trial? This would be unreasonable and create a quagmire of never-ending litigation.

(R&R at 34-35 (citations omitted).)  In short, we agree with the district court that the Settlement Agreement unambiguously provides that Detroit Diesel will pay for the removal and installation of <u>engines</u>, <u>gears</u>, and <u>accessories</u>, and nothing more. And this interpretation makes good sense -- while Detroit Diesel agreed to make F.W.F. whole with engines upgraded beyond the original purchasing specifications, plainly it did not agree to put F.W.F. in a position better than it originally would have been, not only with upgraded engines, but with upgrades to other major and distinct parts of the vessel.

The only other support F.W.F. relies on comes from extrinsic evidence. However, "parol evidence . . . is not admissible when the contracts, as in this case, are unambiguous."  <u>Summit Consulting, Inc. v. J.J. Walsh Constr., Inc.</u>, 568 So.2d 1290, 1292 (Fla. Dist. Ct. App. 1990) (citations omitted); <u>see also</u> <u>Barakat v. Broward County Housing Auth.</u>, 771 So.2d 1193, 1194-95 (Fla. Dist. Ct. App. 2000).  Because the Settlement Agreement is unambiguous, the district court properly refused to consider F.W.F.'s extrinsic evidence on the parties' intent.[2]

---

[2] F.W.F. also argues that the district court erred in ignoring its extrinsic evidence, while considering Detroit Diesel's extrinsic evidence.  But while the court did consider testimony

10

Accordingly, we conclude that the district court did not err in denying

F.W.F.'s claim that Detroit Diesel had materially breached the Settlement

Agreement.

**AFFIRMED.**

---

regarding custom and usage, it did so <u>only</u> to determine whether anything besides the Settlement Agreement -- such as an implied warranty of workmanlike performance -- obligated Detroit Diesel to pay "all costs," as urged by F.W.F.  Thus, F.W.F.'s suggestion that the district court used extrinsic evidence to construe the plain language of the Settlement Agreement simply fails.