[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11548

_____

CHRISTOPHER F. CAUSEY,

Plaintiff-Appellant,

*versus*

BP EXPLORATION & PRODUCTION INC,
BP AMERICA PRODUCTION COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket Nos. 3:19-cv-02108-MCR-GRJ,
3:19-cv-00963-MCR-GRJ

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

With the benefit of oral argument and having reviewed the record and the briefs, we affirm for the reasons given by the district court in its well-reasoned decision, which is attached.

**AFFIRMED.**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: DEEPWATER HORIZON BELO CASES | Case No. 3:19cv963 |
| This Document Relates to: *CHRISTOPHER F CAUSEY,* Case No. 3:19cv2108 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**

Pending is the Defendants' Motion for Summary Judgment Based on Election of Remedies under the MSA (the Medical Benefits Class Action Settlement Agreement), ECF No. 35, arguing Causey released his BELO claim by having elected to pursue a workers' compensation claim, and Plaintiff's response in opposition, ECF No. 41. On consideration, the motion is granted.

**I.    Background**

This case arises out of the April 20, 2010, blowout, explosions, fires, and subsequent oil spill involving the Deepwater Horizon mobile offshore drilling unit at the Macondo well site on the outer continental shelf in the Gulf of Mexico off the coast of Louisiana. It is one of several hundred individual cases brought against Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively, "BP") by clean-up workers and coastal residents of North

Case No. 3:19cv2108-MCR-GRJ

Florida who claim to suffer various chronic medical conditions as a result of exposure to crude oil and other chemical dispersants applied following the spill. The cases were originally consolidated in the Eastern District of Louisiana as part of the Deepwater Horizon multidistrict litigation (MDL No. 2179). For personal injury plaintiffs, the MDL resolved in the certification of a Medical Benefits Class and approval of a comprehensive Medical Benefits Class Action Settlement Agreement ("Settlement Agreement"). The Settlement Agreement provided a claims process for eligible class members who were diagnosed with a specified physical condition on or before April 16, 2012, and also a separate Back End Litigation Option ("BELO") for those with a physical condition diagnosed after that cutoff date, categorized as a Later-Manifested Physical Condition ("LMPC").[1] The Settlement Agreement provides that a BELO plaintiff seeking compensation for a particular LMPC must elect a remedy and may pursue either (1) compensation for that LMPC through workers' compensation law or (2) compensation from BP for that LMPC

---

[1] The Settlement Agreement defines "Later-Manifested Physical Condition" as:

"a physical condition that is first diagnosed in a medical benefits settlement class member after April 16, 2012, and which is claimed to have resulted from [the] class member's exposure to oil, other hydrocarbons, or other substances released [during the oil spill], and/or exposure to dispersants and/or decontaminants used in connection with the response activities, where such exposure occurred . . . on or prior to April 16, 2012, for clean-up workers.

*See* ECF No. 1 at 2 n.1 (quoting Master Settlement Agreement, Section II.VV).

Case No. 3:19cv2108-MCR-GRJ

pursuant to the BELO process.   ECF No. 3-3 at 1-2 (Settlement Agreement § VIII.B.1).   In other words, the BELO process entitles Medical Benefits Class members who are diagnosed with a LMPC, and who do not pursue workers' compensation benefits for that condition, to bring an individual lawsuit for damages against BP.

Plaintiff Christopher Causey is a Medical Benefits Class member.  He was employed as a beach clean-up worker in Escambia County, Florida, in the aftermath of the spill and was exposed to chemicals and dispersants while working.  Causey filed suit in the Eastern District of Louisiana on November 2, 2018, where he made the necessary disclosures regarding his claim as a beach clean-up worker and was permitted to proceed in a BELO suit for the LMPCs of chronic conjunctivitis and chronic dry eye syndrome.  In relevant part, the necessary disclosures required Causey to state whether he had ever filed a workers' compensation claim related to his conditions or symptoms at any time after April 20, 2010, or in the last 10 years, to which he consistently answered "No."[2]  *See* ECF Nos. 35-1 at 13; 35-2 at 10; 35-8 at 11.  The case was then transferred to this Court on July 17, 2019.

---

[2] Specifically, the Proof of Claim, signed on February 21, 2013; his Notice of Intent to Sue, signed on September 13, 2016; and his Plaintiff Profile form, verified on January 21, 2019, each filed in the Eastern District of Louisiana before transfer, Causey was asked this question and in Case No. 3:19cv2108-MCR-GRJ

In the Complaint, consistent with the Proof of Claim and verified Plaintiff Profile Form, Causey alleged that he performed beach clean-up work for Plant Performance Services ("P2S"), working 12 hour days, 7 days a week for four weeks, in June and July 2010. His primary duties involved direct contact with harmful chemicals, digging and picking up tar balls on shore and placing them in garbage bags or buckets. Causey alleged that his conditions of chronic conjunctivitis and chronic dry eye syndrome first appeared on July 8, 2010, and manifested within 24 hours of exposure, and that he was diagnosed on September 8, 2012. In his deposition, Causey testified that he had not filed a workers' compensation claim in the last 10 years. ECF No. 35-10.

The record reflects, however, that Causey signed a Release and Waiver of Workers Compensation Claim on October 14, 2013, in which his employer, P2S, agreed to pay him $4,343.06 as full compensation for all injuries or illnesses incurred on or about July 4, 2010, and also for any other injuries or illnesses he incurred while employed by P2S, even if the effects were not immediately apparent. ECF No. 35-6. The release further states that it "constitutes an election of remedies and

each instance, he checked a box stating he had not made a workers' compensation claim for any related condition.

Case No. 3:19cv2108-MCR-GRJ

constitutes a complete release of all actions against the Released Parties[3] arising out of any Workers' Compensation accident in any way related to . . . personal injury while Claimant was employed by [P2S] including, but not limited to personal injury claims asserted or that could be asserted in" the Deepwater Horizon MDL. *Id.* at ¶26. The release did not list any specific injuries or illnesses but released all claims for personal injury, asserted and unasserted, against P2S.

Several documents related to the workers' compensation claim referenced the nature of Causey's symptoms and injuries prior to his execution of the workers' compensation release. An attorney letter dated April 17, 2012, regarding Causey's workers' compensation claim, indicated the firm was representing Causey in his claim for benefits based on his beach clean-up work for P2S in the summer of 2010, and stated that his symptoms included "breathing problems, rash on hands and feet, nausea, sinus problems, hair loss, headaches, staph infection and poor vision."[4] ECF No. 35-3. Causey's First Report of Injury Form for his workers' compensation

---

[3] The Released Parties are defined as the "Employer [P2S] and anyone acting on Employer's behalf, including, but not limited to, past, present and future shareholders, parent companies, subsidiaries, affiliates, management, divisions, directors, officers, partners, employees, attorneys, adjusters, agents, independent contractors, successors, and assigns." ECF No. 35-6 at ¶1.

[4] In a "P2S Client Questionnaire," Causey listed the following medical issues: "Breathing, hand and feet breakage, nauseous, sinus mucus, night sweats, short breath, hair loss, aching joints, bowl movement problems, staff [sic] infections, eyesight bled [sic], redness, headache." ECF No. 35-5.

Case No. 3:19cv2108-MCR-GRJ

claim, dated May 1, 2012, reported an injury date of July 4, 2010, described the injury or illness as resulting from "a toxic poisoning as a result of exposure to oil and dispersant," and listed symptoms of "breathing problems, rash on feet and hand, nausea and sinus problems." ECF No. 35-4. A law firm memo dated April 2, 2013, memorialized a conference with Dr. Harbour discussing workers' compensation claims the firm was representing. The memo noted that Causey was one of the firm's clients with a workers' compensation claim against P2S and that he had been diagnosed with "Optic Atrophy, dry eye syndrome, visual field loss, toxic optic neuropathy." ECF No. 35-7.

In opposition to summary judgment, Causey provided some evidence that P2S was not his only employer during his beach clean-up work.[5] He presented the deposition testimony of Dr. David Dutton, who was BP's lead industrial hygienist and toxicologist for the Unified Area Command, which coordinated the spill response. ECF No. 41-3 at 5. Based on his review of the records, Dr. Dutton observed that Causey was a beach worker who received safety training from P2S but was actually employed by a different company, TL Wallace, during his beach clean-up work, from July 21, 2010, through November 9, 2010. Consistent with this

---

[5] Causey's Complaint, Proof of Claim, Plaintiff Profile Form, and Notice of Intent to Sue all list only P2S as his employer.

Case No. 3:19cv2108-MCR-GRJ

testimony, Causey agreed, during his deposition, that he had worked for a couple of different companies, including TL Wallace, which he said "rang a bell." ECF No. 41-4 at 4. He added, "Yes. I . . . worked with them for the remaining." *Id.* at 4-5. When asked whether his "four or five days" of training were all with P2S, Causey answered "yes." *Id.* at 5. There is no evidence that he filed a workers' compensation claim against TL Wallace.

## II.    Discussion

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). The moving party bears the burden of establishing that there is no genuine dispute of fact and that the plaintiff has failed to establish an essential element of the claim. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To avoid summary judgment, the nonmoving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal marks omitted).

Case No. 3:19cv2108-MCR-GRJ

The terms of a settlement agreement are given their "plain and ordinary meaning" and enforced as a contract, according to their terms. *Waters v. Int'l Precious Metals Corp.*, 237 F.3d 1273, 1277 (11th Cir. 2001). Under the unambiguous terms of the court-approved Settlement Agreement, a Medical Benefits Class member must elect a remedy by pursuing either a workers' compensation claim or pursuing a claim through the BELO process—not both. *See* ECF No. 3-3 at 1 (Settlement Agreement § VIII.B.1). And, a class member who has filed a workers' compensation claim "for a particular [LMPC] may not seek compensation for that [LMPC] through" the BELO process. *See Id.* at 2 (Settlement Agreement Section VIII.B.2).

BP contends it is entitled to summary judgment based on the Settlement Agreement's election of remedies provision because Causey previously elected to pursue a worker's compensation claim that included injuries or medical conditions related to his eyes from exposure due to his beach clean-up work. BP argues that Causey thereby released his right to bring this BELO suit.

Causey does not dispute that he signed the October 14, 2013, Release and Waiver of Workers Compensation Claim but contends there is a dispute of fact over whether the particular LMPCs involved in this suit (chronic conjunctivitis and chronic dry eye syndrome) were the subject of his workers' compensation claim.

Case No. 3:19cv2108-MCR-GRJ

Causey points to the differing descriptions of his symptoms in the workers' compensation claim materials and notes that they do not reference the "particular" LMPCs at issue—"chronic conjunctivitis" and "chronic dry eye syndrome." While an attorney memo noted that Dr. Harbour diagnosed Causey with dry eye syndrome, Causey maintains that is the only reference to a similar condition. Causey notes that chronic conjunctivitis is not referenced at all in those materials and that the release itself referred to neither condition.

Causey further argues that there is a dispute of fact as to whether the LMPCs, which he contends resulted from beach clean-up work, were within the scope of his prior workers' compensation claim, which was limited to injuries or illness incurred during his employment with P2S. Causey argues that, in light of Dr. Dutton's testimony, there is evidence that he only did safety training while employed by P2S and did not perform any clean-up work for P2S.

The Court will enforce the plain terms of the Settlement Agreement, which are unambiguous and act to bar Causey's BELO suit unless the particular LMPCs asserted were not within the scope of the workers' compensation benefits he pursued. The Court finds that on the undisputed record, Causey's BELO suit is barred.

Case No. 3:19cv2108-MCR-GRJ

The LMPCs at issue in this suit are eye conditions. While the workers' compensation release does not specify any conditions in particular, it alleges a date of injury as July 4, 2010, and includes all injuries or illnesses incurred, whether asserted or unasserted, while Causey was employed by P2S. Causey's workers' compensation report of injury or illness referenced "toxic poisoning as result of exposure to the oil and dispersant that he helped to clean up on the beaches," ECF No. 35-4, and in his P2S Client Questionnaire, Causey referenced several medical issues, including ocular, ECF No. 35-5. Despite there being no express reference to "chronic conjunctivitis" and "chronic dry eye" in the workers' compensation report of injury or illness (submitted in May 2012, which was drafted before his diagnosis in September 2012) or in the release dated October 14, 2013, the attorney memo dated April 2, 2013, detailing workers compensation cases, referenced Causey's diagnosed ocular conditions as including dry eye. It would be unreasonable without more to infer that these known conditions, which Causey states manifested within 24 hours of exposure around July 8, 2010, were somehow excluded. There is no dispute that the LMPCs at issue were diagnosed over a year before the release was executed, and the record is devoid of any indication that Causey sought to exclude those particular conditions from his workers' compensation claim. They are within the broad scope of the release.

Case No. 3:19cv2108-MCR-GRJ

Furthermore, the Court finds no genuine material dispute of fact arising from Dr. Dutton's testimony.  His statement that Causey began working for TL Wallace on July 21, 2010, does not contradict the dates of employment Causey documented with P2S (from June through July 2010, ECF No. 35-8 at 4).  Also, by Causey's own statements, the exposure causing his conditions occurred between June 7, 2010, and July 16, 2010, ECF No. 35-8 at 6, and the conditions first appeared around July 8, 2010, within 24-hours of exposure, ECF No. 35-1, at 10.  And P2S is the only employer named in the Complaint, as well as in every other document Causey signed on record in this litigation.[6]

Time and again during these proceedings Causey indicated that he had not filed any workers' compensation claim, but as he now admits, this was not the case.  Such an attempt to game the system cannot be tolerated and runs completely contrary to the express terms of the Settlement Agreement.  The Court is not required to draw unreasonable inferences, such as, that Causey's express denial of any workers' compensation claim was inadvertent on four occasions or that he was mistaken about the name of his employer in every claim document and got all of the dates wrong.  It

---

[6] Even assuming a dispute about whether Causey was in fact employed by P2S during all of his beach clean-up work, it is not material because it is undisputed that Causey is seeking compensation for conditions that first appeared around July 8, 2010, and were diagnosed well before he signed the workers' compensation release on October 14, 2013.

Case No. 3:19cv2108-MCR-GRJ

is undisputed that Causey was well aware of the LMPCs at issue at the time he pursued and accepted workers' compensation benefits for his beach clean-up work. On the undisputed record, the Court finds that Causey's active pursuit of a workers' compensation claim including ocular conditions and his acceptance of a benefits award constituted a voluntary election of the workers' compensation remedy for LMPCs of chronic conjunctivitis and chronic dry eye syndrome, allegedly caused by his exposure to oil and chemical dispersants as a beach clean-up worker in July 2010 and diagnosed over a year before his workers' compensation award. Consequently, pursuant to the Settlement Agreement, Causey is now precluded from pursuing a BELO claim for those same physical conditions.

Accordingly, BP Defendants' Motion for Summary Judgment Based on Election of Remedies under the MSA, ECF No. 35, is **GRANTED**. The Clerk is directed to enter judgment accordingly, tax costs against the Plaintiff, and close the file.

**DONE AND ORDERED** this 22nd day of April 2021.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:19cv2108-MCR-GRJ